IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS W.,[1]                                    Case No. 3:19-cv-01597-SB

                    Plaintiff,                          **OPINION AND ORDER**

        v.

ANDREW M. SAUL, Commissioner of Social
Security,

                    Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

        Nicholas W. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear

Plaintiff's appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the

jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

follow, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

I.    PLAINTIFF'S APPLICATION

Plaintiff was born in July 1984, making him twenty-eight years old on April 11, 2013, his alleged disability onset date. (Tr. 81, 89.) Plaintiff has a general equivalency degree and past relevant work experience as a framer and carpenter. (Tr. 33, 72, 191.) In his application, Plaintiff

alleged disability due to injuries to his right shoulder and cervical, thoracic, and lumbar spine.[2] (Tr. 81, 89.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on June 22, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 21.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on July 17, 2018. (Tr. 43-79.) On September 10, 2018, the ALJ issued a decision denying Plaintiff's application. (Tr. 21-35.) On August 4, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of June 30, 2016 (*see* Tr. 21) reflects the date on which his insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before June 30, 2016, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id*. at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 21-35.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 11, 2013, his alleged disability onset date. (Tr. 23.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[R]ight shoulder condition, cervical spine condition, lumbar spine condition, and mild thoracic scoliosis." (Tr. 23.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 24.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can stand and walk for four hours during an eight-hour workday; (2) Plaintiff can occasionally balance, stoop, kneel, crawl, crouch, reach overhead bilaterally, and climb ramps

and stairs, but can never climb ladders, ropes, or scaffolds; and (3) Plaintiff needs to alternate "between sitting and standing as needed." (Tr. 24.) At step four, the ALJ concluded that Plaintiff was unable to perform his past work. (Tr. 33.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a mail clerk, photocopy machine operator, and small products assembler. (Tr. 34.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide: (1) clear and convincing reasons for discounting Plaintiff's symptom testimony; (2) germane reasons for discounting the lay witness testimony provided by Plaintiff's wife and worker's compensation lawyer; and (3) legally sufficient reasons for discounting the opinions of Plaintiff's medical providers. As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court therefore reverses the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 25, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard here.

### 1.    Reported Activities

As an initial matter, the ALJ appeared to discount Plaintiff's testimony based on his reported activities. For example, after stating that Plaintiff's statements are "inconsistent with the evidence," the ALJ noted that Plaintiff continued to perform chores like mowing the lawn, even though he reported that his back pain increased after performing such chores. (Tr. 25.) The ALJ

also noted that in July 2016, Plaintiff reported that "he had been very busy taking care of his new child." (Tr. 25.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Here, for the reasons discussed below, substantial evidence does not support the ALJ's finding that Plaintiff's level of activity is inconsistent with his claimed limitations. *See Garrison*, 759 F.3d at 1016 ("Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [the claimant's] level of activity [is] inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [his] credibility.'") (citation omitted).

### a.    Childcare Activities

As noted above, the ALJ determined that Plaintiff's ability to care for his young daughter undermines his claimed limitations. The Ninth Circuit's decision in *Trevizo* is instructive on this issue. In *Trevizo*, the ALJ determined that the claimant's childcare activities undermined her claimed limitations. *Trevizo*, 871 F.3d at 682. The Ninth Circuit held that the "mere fact" that the claimant cared for small children did not "constitute an adequately specific conflict with her reported limitations," because there was "almost no information in the record about [the claimant's] childcare activities." *Id.* The Ninth Circuit also emphasized that the claimant's childcare responsibilities permitted "her to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job." *Id.*

Similar to *Trevizo*, the record here includes almost no information or details about Plaintiff's childcare activities. In fact, the record includes only the following childcare-related evidence, most of which post-dates Plaintiff's date last insured and is consistent with Plaintiff's symptom testimony:

PAGE 7 – OPINION AND ORDER

- July 22, 2016: "Patient has been very busy since the arrival of his new daughter at home. He knows that he has to be more responsibl[e] to take care of her at home." (Tr. 1209.)

- November 16, 2016: "He has difficulty [with] lift[ing] his daughter because of his back condition." (Tr. 1295.)

- December 14, 2016: "His daughter, a new infant is getting bigger and heavier, and he is not able to physically lift her up all the time [which] is a necessary task, due to his pain. His wife also is recovering from [a] motor vehicle accident so . . . he is trying to do as much as he can for house chores to [help out] his wife." (Tr. 1293.)

- January 16, 2017: "He has some challenge [with] lifting and carrying his [infant] daughter, who is growing and gaining weight. One of the comfortable positions is for him to lie down and hold the baby with his both hands, so that he wouldn't hurt his back." (Tr. 1291.)

- February 1, 2017: "He states that he has to be extremely careful about lifting his daughter without injuring his back." (Tr. 1419.)

- May 3, 2017: "[Plaintiff] takes care of his daughter." (Tr. 1433.)

- May 2, 2018: "He reports that medication allows him to participate in caring for his two year old daughter." (Tr. 1442.)

- July 17, 2018: During the hearing before the ALJ, Plaintiff testified that he occasionally takes his daughter to an enclosed park area where he does not need to worry about chasing her and can let her "do her thing," that he is the "person that has to take care of the house and [his] daughter" when his

wife is working, and that doing "something extra with [his] daughter" or around the house makes his pain "much worse" and can impact his ability to function the next day. (Tr. 57-58.) Plaintiff also testified that he takes rest breaks and lies down throughout the day, while mixing in time to "let [his] daughter out," "get [his] daughter changed," and get his daughter "something to snack on." (Tr. 58.) Plaintiff further testified that his back condition was more severe in 2016. (Tr. 59; *see also* Tr. 55-56, Plaintiff addressed 2013 through 2016, the time period at issue, and explained that he was largely stuck in a recliner and, at times, was forced to "pee in a bowl next to [him] in [his] recliner").

Contrary to the ALJ's finding, the record evidence on Plaintiff's childcare duties is consistent with Plaintiff's claimed limitations, as he consistently reported that even lifting his infant child caused him pain. Furthermore, as in *Trevizo*, Plaintiff's childcare responsibilities appear to allow him to rest often, which would be impossible at a traditional full-time job. Also noteworthy is that Plaintiff's childcare activities post-dated the alleged period of disability (i.e., April 11, 2013, the alleged disability onset date, through June 30, 2016, the date last insured). *See Lair-Del Rio v. Astrue*, 380 F. App'x 694, 695 (9th Cir. 2010) (referring to the relevant period in a Title II case as the time "between [the claimant's] onset date of April 1, 1998, and her date last insured of June 30, 1999," because a Title II claimant bears the burden of showing that "she was disabled as of the date last insured"). Thus, the ALJ's conclusion that Plaintiff's childcare activities support discounting his symptom testimony and support a finding of no disability as of June 30, 2016, his date last insured, was not supported by substantial evidence in the record.

As to Plaintiff's ability to perform household chores like mowing the lawn, the ALJ did not address evidence in the record that contradicted his findings. For example, the ALJ acknowledged Plaintiff's testimony that he only does "90 minutes of chores each week (typically split up over time)" (Tr. 25, 58), but Plaintiff also told the ALJ that if he has to mow the lawn, it makes his pain "that much worse." (Tr. 57-58.) Further, Plaintiff's wife testified that Plaintiff can only perform chores "in little spurts," and cannot "complete a load of laundry or simply do the dishes." (Tr. 267; *see also* Tr. 327, January 14, 2016, "He reports he is limited at what he can do at home and is no longer able to do chores in a normal fashion and has to perform things for short durations."). Given the conflicting record evidence, the Court finds that the ALJ erred by selectively considering evidence of Plaintiff's activities and ignoring evidence that contradicted his findings. *See Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (explaining that an ALJ errs by "consider[ing] evidence about [a claimant's] activities selectively, ignoring evidence that contradicted her findings," and noting that the ALJ cited the claimant's ability to mow his lawn, even though he testified that he "would be incapacitated for a couple hours" after mowing for ten minutes).

For these reasons, the ALJ erred in discounting Plaintiff's testimony based on his activities.

### 2.    Secondary Gain

The Commissioner notes that the ALJ cited "evidence suggesting that Plaintiff was motivated by secondary gain," and argues the ALJ "reasonably cited" this evidence in discounting Plaintiff's testimony. (Def.'s Br. at 5.) The Commissioner is referring to a paragraph from the ALJ's decision noting Plaintiff's comment about making more money from worker's compensation benefits than from working:

> The claimant worked with Vocational Rehabilitation. In September 2013, [the claimant] explained that he like the 'Labor and Industries' (the Washington State version of workers compensation) claim status more than working because the money was better. He hoped to receive a pension or begin job retraining. [A physician's assistant] saw the claimant again, noting normal gait and normal range of motion. There were no spasms in the spine. In October 2013, Vocational Rehabilitation stated that the claimant could return to work as a coffee maker/barista.

(Tr. 26) (simplified).

In the Court's view, the ALJ did not make a specific finding that Plaintiff exaggerated his symptoms for secondary gain. *Cf. Jennings v. Saul*, 804 F. App'x 458, 463 (9th Cir. 2020) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the ALJ found that the claimant "exaggerated" his symptoms for "secondary gain"). Rather, the ALJ merely referred to Plaintiff's comment while summarizing the record evidence. "It is improper for a district court to uphold an ALJ's determination based on findings not [made by the] ALJ." *Rocha v. Berryhill*, 771 F. App'x 447, 448 (9th Cir. 2019); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that a reviewing court is "constrained to review the reasons the ALJ asserts" and that general findings are insufficient, as the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints") (simplified). The ALJ's mere reference to Plaintiff's statement does not meet the Ninth Circuit's specificity requirement and does not amount to a clear and convincing reason for discounting Plaintiff's symptom testimony. *See Burrell*, 775 F.3d at 1138 (refusing to rely on a finding that did not meet "our requirements of specificity").

### 3.    Conflicting Medical Evidence

Finally, the Commissioner argues the ALJ "reasonably relied on the medical evidence, including examining medical opinions . . . , to discount Plaintiff's allegations[.]" (Def.'s Br. at 5; *see also* Def.'s Br. at 4, arguing that the ALJ noted that the medical records showed that

Plaintiff's condition was not as severe as he reported, citing to three pages of the ALJ's summary of the record evidence in support of this argument, and providing examples that the Commissioner draws from that summary). The Court finds the Commissioner's argument unpersuasive.

The ALJ never articulated that he discounted Plaintiff's testimony based on an examining physician's opinion, nor did he explain what portion of Plaintiff's testimony any such opinion undermined. (*See* Tr. 25-29.) Although the ALJ summarized medical opinion and record evidence that appears to undermine Plaintiff's claim of disability, he also included medical evidence in the summary that supports Plaintiff's claim of disability, such as the opinions of Plaintiff's treating physician, Harold Lee, M.D. (*See* Tr. 25-29.) Thus, the ALJ failed to meet the Ninth Circuit's specificity requirement. *See Kout v. Astrue*, No. 10-cv-0214, 2011 WL 1883253, at *5 (E.D. Cal. May. 17, 2011) ("The ALJ . . . did not state these reasons in finding Plaintiff not entirely [reliable]. The Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons that the ALJ asserts. The Court cannot make findings for the ALJ.") (citation omitted).

Even if the ALJ had expressly discounted a specific portion of Plaintiff's testimony based on conflicting medical evidence, the ALJ may not rely solely on a lack of supporting medical evidence to discount a claimant's testimony. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))); *see also Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (holding that the ALJ "failed to provide clear and convincing reasons supported by substantial evidence to support her conclusion that [the claimant's] testimony was

not entirely credible," and noting that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony" (citing *Burch*, 400 F.3d at 681)). On remand, the ALJ should reevaluate Plaintiff's testimony and "specifically identify the testimony [he] finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified).

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the [reliability] of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's [subjective] complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

///

///

///

### B.    Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay

witness testimony provided by his worker's compensation lawyer, Douglas Palmer ("Palmer"),

and Plaintiff's wife.

### 1.    Palmer's Testimony

Palmer drafted a letter in support of Plaintiff's DIB application on April 16, 2018.

(Tr. 266.) In his letter, Palmer explained that he served as Plaintiff's worker's compensation

lawyer, he met with Plaintiff numerous times, Plaintiff could only sit in a chair for five to ten

minutes, Plaintiff often needed to kneel or lie down, Plaintiff changed position every five to ten

minutes, and Plaintiff spent the longest periods of time kneeling, lying down, or leaning on a

table. (Tr. 266.) Palmer also explained that Plaintiff's difficulties are due to his back pain.

(Tr. 266.)

The ALJ assigned only "limited weight" to Palmer's testimony. (Tr. 33.) The ALJ

explained that he assigned only limited weight because Palmer's "observations do not constitute

medical evidence, and the record contains stable examinations and only mild to moderate

findings on imaging." (Tr. 33.)

Plaintiff argues that the ALJ erred in discounting Palmer's testimony because the ALJ

suggested that Palmer must have medical expertise to express opinions about Plaintiff's

limitations. (Pl.'s Opening Br. at 10.) Plaintiff also argues that contrary to the ALJ's finding,

Palmer's lay witness testimony is consistent with the objective medical evidence. (Pl.'s Opening

Br. at 11.)

The Court concludes that the ALJ did not commit harmful error in discounting Palmer's

testimony. Plaintiff is correct that Palmer did not need to have any medical expertise to offer

opinions about what he observed during his interactions with Plaintiff. *See Faigen v. Astrue*, No.

3:11-cv-00219-JE, 2012 WL 2813971, at *15 (D. Or. June 7, 2012) ("A lay witness's lack of medical expertise likewise is not a proper basis for rejecting lay witness evidence. A lay witness is, by definition, not a medical expert. If the lack of medical expertise were a proper basis for discounting lay witness testimony, such testimony would never be relevant."). Thus, the ALJ's statement that Palmer's observations are not "medical evidence" was not a germane reason for discounting Palmer's lay witness testimony. The Commissioner does not argue otherwise.

Nevertheless, it was proper for the ALJ to discount Palmer's testimony based on conflicting objective medical evidence, such as unremarkable imaging. *See Campbell v. Saul*, --- F. App'x --- , 2021 WL 1105192, at *2 (9th Cir. Mar. 23, 2021) (affirming the ALJ's rejection of lay witness testimony because "the ALJ rejected the lay witness testimony in part because it was not consistent with the preponderance of the objective medical evidence") (simplified); *Isham v. Saul*, 840 F. App'x 260, 261 (9th Cir. 2021) (affirming the ALJ's rejection of lay witness testimony because the ALJ determined that "it was inconsistent with the objective medical evidence").

Plaintiff argues that the ALJ's reliance on conflicting medical evidence was improper because Palmer's testimony is actually consistent with such evidence. Plaintiff, however, is merely advocating for alternatives to the ALJ's rational interpretation of the record, and thus fails to demonstrate reversible error. *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error"). Substantial evidence (i.e., more than a mere scintilla of evidence but less than a preponderance) supports the ALJ's finding here. (*See* Tr. 306, Plaintiff's provider stated that his imaging revealed "mild scoliosis of the thoracic spine and [a] cervical spine that looks normal";

Tr. 308, Plaintiff's provider noted that his imaging revealed only minor degenerative changes and nothing that "looks severe," and that he did "not have anything to explain the severe pain in [Plaintiff's] thoracic spine at this point based on the scans and on the x-rays"; Tr. 414, an x-ray of Plaintiff's lumbar spine was "normal" and showed "no fracture, subluxation, or dislocations"; Tr. 609, 611, Plaintiff's imaging revealed that "L1 and L2 demonstrate mild disc narrowing and bulging," and that "L2 and L3 have disc narrowing desiccation and moderate bulging [and] mildly deformed thecal sac with a mild . . . central spinal stenosis and . . . no compression fracture or any significant central stenosis or disc herniation"; Tr. 1374, imaging of the lumbar spine "demonstrated some degenerative disc disease without any obvious herniation or abutting any nerve roots").

For these reasons, the ALJ did not commit reversible error in discounting Palmer's testimony.

### 2.      Plaintiff's Wife's Testimony

Plaintiff's wife, Brandi W., drafted a letter in support of Plaintiff's DIB application on May 3, 2018. (Tr. 267-68.) In her letter, Brandi W. explained that Plaintiff's condition has deteriorated over the years, Plaintiff constantly needs to shift positions due to chronic back pain, Plaintiff has a hard time performing household chores and playing with his daughter, Plaintiff can only "help around the house" in "little spurts," and Plaintiff can suffer from "days of pain." (Tr. 267.) The ALJ assigned only "limited weight" to Brandi W.'s testimony because "little objective evidence supports" Plaintiff's complaints and Plaintiff's exams were unremarkable. (*See* Tr. 32, emphasizing that Plaintiff's exams "showed intact strength, sensation, and reflexes").

Plaintiff argues that contrary to the ALJ's findings, Brandi W.'s testimony is "consistent with the objective medical evidence and with the multiple physical capacit[y] evaluations

conducted by Plaintiff's examining therapists and his treating doctor[.]" (Pl.'s Opening Br. at 11.) It was reasonable for the ALJ to assign less than full weight to Brandi W.'s testimony given the unremarkable imaging in the record and case law discussed above, as well as Plaintiff's unremarkable exams. (*See* Tr. 823-24, an independent medical doctor who examined Plaintiff and reviewed Plaintiff's medical records stated the following about Plaintiff's back condition: "The claimant has no radiculopathy. There has been a normal sensorimotor exam through multiple examiners. The claimant may be symptomatic due to his degenerative disc disease. However, I can identify no treatment that would be curative for his subjective complaints of pain. He does not need any surgical intervention. He does not need any injections to the spine."; Tr. 1025, June 1, 2016, Plaintiff's treating physician stated: "Patient is alert, cooperative, and in no acute distress. Deep tendon reflex for knee and ankle jerk and symmetrically equal. . . . Motor strength reveals 5/5 in hip flexion, abduction, adduction, internal and external rotations bilaterally. Knee extension and flexion 5/5 bilaterally. Ankle plantar and dorsi flexions 5/5 bilaterally. There is tenderness along the lumbar paraspinal muscles and posterior superior iliac crest.").

For these reasons, the Court concludes that the ALJ did not err in discounting Brandi W.'s testimony.

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v.*

*Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**B.    Analysis**

**1.    Harold Lee, M.D.**

Plaintiff argues that the ALJ failed to provide "clear and convincing" reasons for discounting the opinion of his treating physician, Dr. Lee. (Pl.'s Opening Br. at 8.) The Court disagrees.

As Plaintiff acknowledges, "Dr. Lee consistently opined that Plaintiff would not be able to return to full-time work," but Plaintiff's independent medical examiners "determined that [he] would have no work-related limitations at all." (Pl.'s Opening Br. at 6-7.) Thus, the ALJ was required to give specific and legitimate reasons, not clear and convincing reasons, for discounting Dr. Lee's opinion. *See Tate v. Astrue*, No. 11-cv-7971-PLA, 2012 WL 3705186, at

*4 (C.D. Cal. Aug. 27, 2012) ("Dr. Styner's and Dr. Dillin's opinions on the ultimate issue of whether plaintiff was disabled during the alleged disability period conflicted with those of examining and State Agency physicians who opined that plaintiff was able to perform some work [during the period at issue]. . . . Thus, the ALJ was required to give specific and legitimate reasons for rejecting and assigning little weight to the opinions of Dr. Styner and Dr. Dillin."). The ALJ did so here.

The ALJ discounted Dr. Lee's opinion that Plaintiff "would not be able to return to any work," because it was "inconsistent with normal findings on the independent medical examinations." (Tr. 30; *see also* Tr. 31, the ALJ noted that an independent medical examiner stated that "there were no objective examination findings or imaging studies to support the pain complaints," found "no radiation, weakness, or numbness" on examination, and opined that Plaintiff "would be able to return to work without limitation; Tr. 32, the ALJ observed that an independent medical examiner "gave no work-related limits" and stated that Plaintiff "did not need further treatment").

It was appropriate for the ALJ to discount Dr. Lee's opinion based on conflicting independent medical examinations. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("The contrary opinions of [the examining and non-examining physicians] serve as additional specific and legitimate reasons for rejecting the opinions of [the treating and examining physicians], and provide assurance that the record was sufficiently developed with regard to the issue of physical impairment. Moreover, their opinions serve as substantial evidence supporting the ALJ's findings with respect to [the claimant's] physical impairment and her exertional limitations."); *Lopez v. Berryhill*, No. 1:17-cv-01501, 2019 WL 1325862, at *7 (E.D. Cal. Mar. 25, 2019) ("[T]he ALJ provided specific and legitimate reasons supported by

substantial evidence to discount the opinion of Plaintiff's treating physician[.] . . . Moreover, the
ALJ was entitled to rely on the opinions of the consultative examiners, which were based on
independent examinations." (citing *Tonapetyan*, 242 F.3d at 1149)).

Plaintiff suggests that the ALJ's reliance on the opinions and findings of the independent
medical examiners was misplaced because the ALJ "essentially rejected" these opinions by
finding Plaintiff more limited than the independent medical examiners. (Pl.'s Opening Br. at 6.)
The ALJ found that the independent medical examiners' opinions were consistent with Plaintiff's
prior exams and imaging results, which showed "minimal objective findings" (Tr. 32), which is
consistent with the ALJ's decision to discount Dr. Lee's opinion. That the ALJ included
additional limitations in the RFC (e.g., a sit/stand option) not recommended by the independent
medical examiners does not mean that the ALJ is precluded from relying on other aspects of
those opinions to call into question a conflicting medical opinion. Accordingly, the ALJ did not
err in discounting Dr. Lee's opinion on this ground.

The ALJ also discounted opinions that Dr. Lee expressed during the period at issue
because the ALJ found them to be "vague" and not adequately explained. (*See* Tr. 29, "This
March 2014 opinion receives limited weight because it is vague. 'Long-term' could mean many
things, and Dr. Lee did not specify what he meant by repetitive activities with the trunk.").
Plaintiff has not challenged this finding on appeal. (*See* Pl.'s Opening Br. at 5-8, Pl.'s Reply at 2-
5). Although the case law above suggests that the ALJ's reliance on the conflicting independent
medical examinations alone was sufficient to discount Dr. Lee's opinion, an ALJ may also
discount opinions that are too vague. *See Darden v. Saul*, --- F. App'x --- , 2021 WL 1329036, at
*1 (9th Cir. Apr. 9, 2021) ("The ALJ did not err by giving little weight to the opinion of

Darden's primary care physician, Dr. Cooke. . . . The ALJ also properly discounted Dr. Cooke's opinion for being vague.").

For these reasons, the Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Lee's opinions.

### 2. Dung Nguyen, D.O. and Tina Galey

Plaintiff also argues that the ALJ failed to provide "clear and convincing" reasons for discounting the opinion of a different treating physician, Dung Nguyen, D.O. (Pl.'s Opening Br. at 8.) Dr. Nguyen and a nurse practitioner, Tina Galey ("Nurse Galey"), co-signed a physical capacities evaluation on July 9, 2018. (Tr. 1450-51.) Unlike the independent medical examiners, Dr. Nguyen and Nurse Galey determined that Plaintiff would suffer from limitations that would preclude gainful employment (i.e., Plaintiff would miss at least four days of work each month due to his condition). (Tr. 75, 1451.) Thus, the ALJ was required to provide specific and legitimate reasons for discounting their opinion. *See Tate*, 2012 WL 3705186, at *4. The ALJ satisfied that standard here.

Notably, the ALJ discounted Dr. Nguyen and Nurse Galey's opinion because they did not treat Plaintiff during the relevant time period and issued their opinion after Plaintiff's date last insured. (*See* Tr. 31, "This opinion receives little weight. It is from June 2018, two years after the date last insured, and there is no indication that it applied before the [claimant's] date last insured. . . . Additionally, these providers began seeing the claimant in 2017, more than six months after the claimant's date last insured."). It was appropriate for the ALJ to discount Dr. Nguyen and Nurse Galey's opinion on these grounds. *See Wendy S. v. Comm'r of Soc. Sec.*, No. 3:19-cv-01771-BR, 2020 WL 6203552, at *4 (D. Or. Oct. 22, 2020) ("Dr. Liptan's opinion was rendered over a year after Plaintiff's DLI and related only to her treatment of Plaintiff after the relevant period. As noted, Dr. Liptan did not treat Plaintiff during the relevant period.

Accordingly, Dr. Liptan lacked personal knowledge of Plaintiff's condition during the period at issue."); *see also Cardenas v. Berryhill*, 729 F. App'x 610, 611 (9th Cir. 2018) ("The ALJ noted that the form 'does not state to what time period it refers.' Regardless of the time period referenced in the form, Dr. Lawler lacked first-hand knowledge of Cardenas's condition during the relevant period for purposes of finding disability, April 2008—December 2008, as Dr. Lawler did not treat or examine Cardenas within seven months of that period.").

The ALJ also determined that Dr. Nguyen and Nurse Galey's opinion was "inconsistent with examinations that showed intact strength, sensation, and reflexes." (Tr. 31.) An ALJ may discount a medical opinion based on conflicting medical evidence, such as unremarkable examinations. *See Benear v. Saul*, 838 F. App'x 305, 306 (9th Cir. 2021) (holding that the ALJ satisfied the specific and legitimate reasons standard and noting that the ALJ discounted a treating physician's opinions based on "unremarkable" examinations). Accordingly, the Court concludes that the ALJ did not err in discounting Dr. Nguyen and Nurse Galey's opinion on this ground.

In sum, the ALJ provided specific and legitimate reasons for discounting Dr. Nguyen and Nurse Galey's opinion.

### 3.    Plaintiff's Physical Therapist

Plaintiff also suggests that the ALJ needed to provide "clear and convincing" reasons for discounting the opinion of Plaintiff's physical therapist, Dan Hughes ("Hughes"). (*See* Pl.'s Opening Br. at 8, arguing that the ALJ "improperly rejected Dr. Lee's opinions and the supportive opinions issued by Dr. Nguyen, [Nurse] Galey, and [physical therapist] Hughes"). Plaintiff, however, does not address the findings the ALJ made in discounting Hughes's opinion. (*See* Pl.'s Opening Br. at 5-8, Pl.'s Reply at 2-5.) Instead, Plaintiff addresses only the ALJ's

finding about Dr. Lee's statement that he agreed with Hughes's January 2016 physical capacity evaluation.

The ALJ relied on unremarkable imaging and examination findings in discounting Hughes's opinion (*see* Tr. 31), which are legally sufficient reasons for discounting a medical opinion. The ALJ also relied on the fact that one of Hughes's opinions was issued "thirteen months after the date last insured," and it was "not clear if it applies at all to the period before the date last insured." (*Id.*) Given these findings and Plaintiff's failure adequately to address them and explain why they were legally insufficient, the Court finds that the ALJ did not err in discounting Hughes's opinion.

## IV.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to

remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court remands this case for further proceedings because there are unresolved conflicts between erroneously rejected evidence (i.e., Plaintiff's symptom testimony) and other record evidence (i.e., Plaintiff's unremarkable imaging and conflicting medical opinions), and because the ALJ did not adequately explain why he discounted Plaintiff's testimony. *See Brandon v. Saul*, 821 F. App'x 857, 858 (9th Cir. 2020) (explaining that it is appropriate for a district court to remand for further proceedings where there are unresolved conflicts or ambiguities "between the erroneously rejected [evidence] and other record evidence"); *Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain [record] evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings.").

The Court also notes that there is record evidence about a surveillance video of Plaintiff that raises serious doubts about whether Plaintiff is disabled. An orthopedic surgeon reviewed the video at the request of a claims manager with the Washington State Department of Labor and Industries. The surgeon provided this response to the eighteen-minute video, which was taken around the time of Plaintiff's date last insured of June 30, 2016:

> I have reviewed the surveillance video of a man identified as [Plaintiff]. These films were taken while [Plaintiff] was taking material from his house and placing it in his SUV and the trailer behind his SUV. The materials included some furniture and boxes, the weight of which I could not determine, but it was noted that [Plaintiff] had to lean backwards in order to carry these furniture items in front of him. So, probably they were heavy. At no time during this video surveillance did I see [Plaintiff] try to protect his back or indicate that he was unable to use his back normally in every manner.

This surveillance video certainly tends to contradict any reported limitations prescribed by his attending physician.

(Tr. 1406-07; *see also* Tr. 260-61, 270, referring to the video as being taken in "June 2016" and "July 2016").

Plaintiff's providers, including Dr. Lee, informed an industrial appeals judge that the surveillance video "did not change their opinions" regarding Plaintiff's work-related limitations. (Tr. 261-62.) The record also suggests that Plaintiff complained of pain following the videotaped incident. (*See* Tr. 368, August 3, 2016, Plaintiff reported "increased pain due to moving to a new home"; Tr. 1295, November 16, 2016, Dr. Lee noted that Plaintiff had "been suffering pain because of his moving because he had to [be] physically involved since there are not many people to help him out"). Nevertheless, this video evidence, and the orthopedic surgeon's opinion about it, supports a finding that conflicts in the record warrant remand for further proceedings.

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 26th day of April, 2021.

*Stacie F. Beckerman*

———————————————————
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 25 – OPINION AND ORDER